UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 1:16-cr-00103-JAW |
| | ) | |
| DONALD L. CAIN, | ) | |
| | ) | |
|     Defendant | ) | |

## RECOMMENDED DECISION ON
## DEFENDANT'S MOTION TO SUPPRESS

In this case, Defendant is charged with one count of stalking (18 U.S.C. § 2261A(2)(B) and two counts of transmitting threatening interstate communications (18 U.S.C. § 875(c)). The matter is before the Court on Defendant's Motion to Suppress. (ECF No. 88.)

Through the motion, Defendant seeks to suppress evidence from law enforcement's search for and of his smart phone, and statements he made during the course of his encounter with law enforcement officials on January 21, 2016. Defendant maintains the search for and of the phone was unlawful, and that his statements were involuntary.

After consideration of the evidence and the parties' arguments, I recommend the Court deny the motion.

**Proposed Findings of Fact**[1]

Based on the evidence presented at the hearing, I propose the Court find the following facts:

1. In January 2017, FBI agent Douglas Collier, who worked in the Columbia, South Carolina, FBI office, received a request from a Maine FBI agent for assistance in the arrest of Defendant, who was residing at the time in South Carolina. A warrant had been issued by the District of Maine for Defendant's arrest.

2. Through communications with the FBI agent in Maine, Agent Collier learned Defendant could be armed and perhaps suicidal.

3. After receiving the call, Agent Collier's office conducted a pre-arrest investigation, including surveillance of Defendant and his residence.

4. At approximately 8 a.m. on January 21, 2016, Agent Collier and three other law enforcement officials went to Defendant's residence to arrest him. The officials, one other FBI agent (Jason Greenan) and two police officers (Emmanuel DeJesus and Holly Wagner) assigned to a joint task force with the FBI, were dressed in plain clothes, but each had a badge or some other visible marking that reflected that the officer was a member of law enforcement.

---

[1] During the testimonial hearing on the motion to suppress, law enforcement officials and Defendant described the circumstances of Defendant's arrest and the search of Defendant's phone. Because the law enforcement officials' accounts of the events were much different than Defendant's account, the parties agreed that as part of its deliberation, the Court must assess the credibility of the witnesses and determine which testimony is credible. Following the hearing, the parties submitted written argument on the credibility issue. (ECF Nos. 111, 115.) The proposed findings of fact reflect the evidence, including the testimony, I found to be credible.

5. When the law enforcement officials arrived at Defendant's residence, two of the officials went to the back of the building and two officials, including Agent Collier, went to the front door.

6. Agent Collier and Agent Greenan, who accompanied Agent Collier to the front door, knocked on the front door approximately 8 to 10 times; however, no one answered the door.

7. Agent Collier decided to go to Defendant's work place. Two other officers (Officers Wagner and Emmanuel) accompanied Agent Collier. Agent Greenan remained at Defendant's residence.

8. Shortly thereafter, Agent Greenan observed someone move within the house, and informed Agent Collier of his observation.

9. Agent Collier and the officers returned to Defendant's residence. Agent Collier knocked on the door again, and announced himself. When no one came to the door, Agent Collier called the telephone number he had for Defendant. No one answered the phone.

10. Because no one answered the door or the phone, Agent Collier kicked in the door, and entered the house with his weapon drawn. Agent Greenan also entered the house with his weapon drawn.

11. Upon entering the building, Agent Collier observed Defendant standing in a hallway with some type of bag or satchel. Agent Collier ordered Defendant to the ground. Defendant did not comply.

12. Agent Collier holstered his weapon, but Agent Greenan maintained his weapon in a drawn position. Agent Collier then took Defendant by the arm in order to take him to the ground and handcuff him. Defendant did not actively resist. After Defendant was handcuffed, Agent Greenan holstered his weapon.

13. Agent Collier searched Defendant after he placed Defendant in handcuffs. During the search, Agent Collier found an iPhone in the front pocket of the jacket Defendant was wearing at the time. Agent Collier placed the phone on the counter in the kitchen.

14. When Defendant was on the floor, Officers Wagner and Emmanuel entered the house with their weapons drawn. The officers "cleared" the house and then holstered their weapons.

15. Agent Collier reviewed with Defendant his Miranda rights. While in the house, at 8:31 a.m., Defendant signed the form acknowledging he had received and understood his Miranda rights. At 8:31 a.m., he also signed a form consenting to the search of the house.

16. After Agent Collier reviewed the Miranda rights with Defendant, Agent Collier asked Defendant if Defendant "would mind" if Agent Collier looked at Defendant's phone. Defendant, without hesitation, replied, "no problem."

17. The iPhone appeared to be in the locked position. Agent Collier pressed the "home button" on the bottom of the screen of the phone. When he did, the missed call notification for the call Agent Collier placed to Defendant's phone before law enforcement entered the house appeared.

18. Agent Collier asked Defendant if he was willing to provide the code to unlock the phone. Defendant provided the code without hesitation.

19. Agent Collier then placed the phone in airplane mode and plugged it into an outlet to maintain the charge. He later arranged for the phone to be forwarded to the FBI agent in Maine.

20. In accordance with Defendant's consent, the officers searched the house.

21. Approximately thirty (30) minutes elapsed from the time Defendant was handcuffed to the time he was transported to the courthouse for his initial appearance.

## Discussion

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. In addition, the Due Process Clause and the Self-Incrimination Clause of the Fifth Amendment require that a defendant's confession be voluntary in order to be admitted into evidence against him in a criminal case. *Chavez v. Martinez*, 538 U.S. 760, 766 – 767 (2003); *United States v. Jacques*, 744 F.3d 804, 809 (1st Cir. 2014) (self-incrimination); *United States v. Boskic*, 545 F.3d 69, 78 (1st Cir. 2008) (due process).

Defendant's contention that the search for and of the phone was unlawful and that his statements were involuntary is based principally on his testimony of the events of January 21, 2016. Defendant testified that he did not answer the door when law

enforcement knocked because he thought the contact was related to the possible repossession of his vehicle; that law enforcement entered the home with weapons drawn, and using expletives ordered him to the ground; that law enforcement placed a gun in his back and up to his neck at various times, including when they forced him to provide the code for the phone; that the subject iPhone was not on his person, but was in his work jacket in the corner of the living room; and that he was not given Miranda nor asked to sign any forms until he was at the courthouse.

If Defendant's testimony regarding law enforcement's entry into the home and the means by which law enforcement obtained the phone and access to the phone was credible, Defendant's motion would conceivably have some merit. Defendant's testimony, however, was at times implausible, and otherwise not credible.[2] The issue, therefore, is whether the circumstances of the search and Defendant's statements to law enforcement generate any constitutional concerns.

"[A] warrantless search is *per se* unreasonable under the Fourth Amendment, unless one of a few specifically established and well-delineated exceptions applies. One of those exceptions allows the police, when they make a lawful arrest, to search the arrestee's person and the area within his immediate control." *United States v. Wurie*, 728 F.3d 1, 3 (1st Cir. 2013), *aff'd sub nom. Riley v. California*, 134 S. Ct. 2473 (2014) (citations and internal quotation marks omitted); *see also United States v. Robinson*, 414 U.S. 218, 235 (1973)

---

[2] For example, the forms signed by Defendant granting his consent to the search of his home and acknowledging his Miranda rights reflect he signed the forms at 8:31 a.m. The time is more consistent with law enforcement's testimony that he signed the forms at the house and did not, as Defendant maintains, sign all documents when he was at the courthouse.

("It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."). "The search incident to arrest exception rests not only on the heightened government interests at stake in a volatile arrest situation, but also on an arrestee's reduced privacy interests upon being taken into police custody." *Riley*, 134 S. Ct. at 2488.

Here, law enforcement officers entered the house to arrest Defendant pursuant to a warrant for his arrest. The phone was found on Defendant's person during a search as Defendant was arrested. The phone was thus obtained as the result of a permissible search incident to Defendant's arrest.

Defendant's statements, including the statement by which he provided the code to the phone, were also voluntary, knowing, and intelligent. In *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), the United States Supreme Court stated, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." "The custodial interrogation inquiry necessarily demands determination of its two subsidiary components: 1) custody and 2) interrogation." *United States v. Ventura*, 85 F.3d 708, 710 (1st Cir. 1996). The record establishes that Agent Collier interrogated Defendant while Defendant was in custody. The credible evidence of record also establishes that Agent Collier provided Defendant the Miranda warning before he questioned Defendant. Having received the Miranda warning,

Defendant was free to "waive effectuation of these rights, provided the waiver [was] made voluntarily, knowingly and intelligently." *Miranda*, 384 U.S. at 444.

When considering whether a defendant waived his or her Miranda rights, "[t]he district court must begin with the presumption that the defendant did not waive his rights. The government bears the burden of proving a valid waiver by a preponderance of the evidence." *United States v. Downs-Moses*, 329 F.3d 253, 267 (1st Cir. 2003) (citation omitted). To be voluntary, knowing, and intelligent, a waiver must be "the product of a free and deliberate choice rather than intimidation, coercion, or deception[,]" and must be "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). "Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Id.*

To the extent Defendant seeks to suppress statements he made concerning his phone, or seeks to suppress data subsequently obtained from the phone, because the search of the phone was the product of an unlawful custodial interrogation, Defendant's argument is unsupported by credible record evidence. Before providing the relevant statements regarding his phone, Defendant acknowledged in writing his receipt and understanding of his Miranda rights. In addition, the record lacks any credible evidence to suggest the statements made after Miranda were involuntary due to acts by law enforcement of

8

intimidation, coercion, or deception.[3] The Government has thus demonstrated by a preponderance of evidence that Defendant voluntarily, knowingly, and intelligently waived his rights.

Finally, to the extent Defendant contends that law enforcement conducted an unlawful search of the cell phone, Defendant's argument fails. Generally, when a cell phone is obtained as the result of a search incident to arrest, a warrant is required to search the phone. *Riley*, 134 S. Ct. at 2493. In this case, the record evidence established that law enforcement did not conduct a warrantless search of the phone. Instead, law enforcement simply took reasonable measures to assure the content of the phone could not be remotely eliminated, which measures the Supreme Court noted were permissible. *Riley*, 134 S. Ct. at 2487.

In *Riley*, the Supreme Court observed that law enforcement can lawfully and without a warrant prevent remote elimination of cell phone data by taking steps to prevent the phone from maintaining a network connection. *Id.* The Court identified certain methods (e.g., removal of the battery, place the phone in an enclosure that isolates the phone from radio waves) which did not involve manipulation of the phone's operating system. The Court also wrote: "[I]f officers happen to seize a phone in an unlocked state, they may be able to disable a phone's automatic-lock feature in order to prevent the phone from locking and encrypting data." *Id.* According to the Court, the legality of this type of "preventive

---

[3] I specifically find that Defendant's testimony regarding the measures law enforcement employed to coerce him to provide the code for the phone lacks credibility.

9

measure" could be evaluated under *Illinois v. McArthur*, 531 U.S. 326 (2001), "which approved officers' reasonable steps to secure a scene to preserve evidence while they awaited a warrant." *Riley*, 134 S. Ct. at 2488.

In *McArthur*, the Supreme Court held that officers reasonably imposed a warrantless seizure on premises occupied by the Defendant by refusing any unescorted entry into the premises until the officers could secure a search warrant. 531 U.S. at 331. The Court reasoned that, "[w]hen faced with special law enforcement needs, diminished expectations of privacy, minimal intrusions, or the like, … certain general, or individual, circumstances may render a warrantless search or seizure reasonable." *Id.* at 330.

In this case, in the event Agent Collier's access to the iPhone's operating system for the limited purpose of placing it in airplane mode can be construed as a warrantless search or seizure, the minimal intrusion does not offend a privacy interest greater than the Government's significant interest in preserving evidence contained on the phone. The steps taken by Agent Collier to activate airplane mode, after Defendant told Agent Collier he could look at the phone and after Defendant provided the security code, were no more intrusive than the steps that would be required to "disable a phone's automatic-lock feature in order to prevent the phone from locking and encrypting data," a measure the Supreme Court described as one reasonable approach to preserve data on an unlocked cellular phone. *Riley*, 134 S. Ct. at 2487.

## Conclusion

Based on the foregoing analysis, I recommend the Court deny Defendant's motion to suppress.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 27th day of April, 2017.