UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:16-cr-00103-JAW |
| | ) | |
| DONALD CAIN | ) | |
| | ) | |
| Defendant | ) | |

**DETENTION ORDER ON MOTION TO REVOKE BAIL**

The Court rejects a defendant's contentions that the Rules of Evidence and the Confrontation Clause must apply to a bail revocation hearing for a defendant who has pleaded guilty and is awaiting a sentencing hearing, concludes that his arguments are without merit, and orders the defendant detained pending the imposition of sentence.

## I. BACKGROUND

### A. Factual Background

On January 9, 2018, Donald Cain pleaded guilty to one count of stalking, a violation of 18 U.S.C. § 2261A(2)(B). *Min. Entry* (ECF No. 153) (*Rule 11 Hearing*); *Indictment* (ECF No. 56). The prosecution version of the offense, which Mr. Cain admitted was true at his Rule 11 hearing, reflects that from November 27, 2014 until December 27, 2015, Mr. Cain engaged in a campaign of harassment against his then wife, L.H. *Prosecution Version* (ECF No. 145). Mr. Cain's harassment included threats to kill his ex-wife's mother, hundreds of telephone calls and text messages, threats to kill his ex-wife and her new boyfriend, threats to send videotapes of L.H. having consensual sex to members of L.H.'s family, threats to rape L.H.'s daughter,

all in vile and violent language.  *Id.* at 1-5.  After pleading guilty, the Court released Mr. Cain pursuant to 18 U.S.C. § 3143, in part because Mr. Cain was gainfully employed out of state and wished to continue employment.  The Court imposed the same bail conditions previously imposed, which included no-alcohol and no-new-crimes restrictions.  *Rule 11 Hearing*; *Am. Order Setting Conditions of Release* at 1-2 (ECF No. 112).

On April 20, 2018, at 2122 hours, a Trooper with the Department of Public Safety in Nevada observed a black Chevy pickup truck overtake his cruiser on I-95 at a high rate of speed.  *NHP Police Report* at 3.  The Trooper calculated the vehicle's speed at eighty-nine miles per hour in a sixty-five-mile-per-hour zone.  *Id.*  The driver, later identified as the Defendant, failed to maintain his lane of travel, crossing over both the right and left lane lines and into adjacent lanes.  *Id.*  Upon stopping the vehicle, Mr. Cain produced a Maine license and denied drinking alcohol that evening.  *Id.*  The Trooper noticed that Mr. Cain had slow slurred speech and the odor of alcohol emanated from his vehicle.  *Id.*

The Trooper put Mr. Cain through some field sobriety tests.  *Id.* at 4.  Mr. Cain failed a number of them.  *Id.*  After Mr. Cain refused a breath test, the Trooper transported him to the Las Vegas detention center and obtained a warrant to take a blood test.  *Id.* at 5.  The blood samples for testing were taken at 2354 and 0052 hours on April 19 and April 20, 2018 respectively.  *Id.*  Mr. Cain was cited for driving twenty-one miles per hour over the speed limit, driving under the influence of alcohol, failure

to drive within marked lanes, expired registration, and lack of proof of insurance, all violations of Nevada state law. *Id.* at 2, 12.

## B. Procedural Background

On December 23, 2015, a federal criminal complaint was issued against Donald L. Cain, charging him with two counts of harassing telephone calls in interstate communications, violations of 47 U.S.C. § 223(a)(1)(E). *Compl.* (ECF NO. 3). On August 9, 2016, a grand jury indicted Mr. Cain for one count of stalking, a violation of 18 U.S.C. § 2261A(2)(B), and two counts of transmitting threatening communications in interstate commerce, violations of 18 U.S.C. § 875(c). *Indictment.* Mr. Cain was arrested in the District of South Carolina on January 21, 2016, and on February 17, 2016, the Magistrate Judge released Mr. Cain on bail with conditions of release, including that he not commit new crimes and that he not use any alcohol. *Order Setting Conditions of Release* at 1-2 (ECF No. 29). The Pretrial Services Report dated February 17, 2016 revealed a 2013 Operating under the Influence conviction. *Pretrial Servs. Report* at 3 (ECF No. 27).

On January 9, 2018, Mr. Cain pleaded guilty to count one, the stalking count. *Rule 11 Hearing.* The Court released Mr. Cain on bail under the same conditions previously imposed, including the no-alcohol and no-new-crimes conditions. *Id.*; *Am. Order Setting Conditions of Release* at 1-2. On May 8, 2018, the Court held a presentence conference, *Min. Entry* (ECF No. 165), and set the sentencing hearing for June 28, 2018. *Notice of Hr'g* (ECF No. 166).

Meanwhile, on April 26, 2018, the Government filed an ex parte motion for the issuance of an arrest warrant. Ex Parte *Mot. for Issuance of Arrest Warrant, for Revocation of Order Setting Conditions of Release, and for an Order Directing the Def.'s Detention* (ECF No. 162) (*Gov't's Mot. to Revoke*). The basis of the motion was the allegation that Mr. Cain had violated the no-new-crimes and no-alcohol conditions of release by drinking alcohol and driving under the influence of alcohol in Las Vegas, Nevada. *Id.* at 2. On April 26, 2018, the Magistrate Judge granted the motion for arrest warrant. *Order* (ECF No. 163). Also on April 26, 2018, the Government moved to revoke Mr. Cain's bail for violating the conditions of release. *Gov't's Mot. to Revoke* at 1-2. On May 10, 2018, the Court set the revocation hearing for May 25, 2018. *Notice of Hr'g* (ECF No. 167).

On May 22, 2018, three days before the scheduled hearing, Mr. Cain moved to continue the revocation hearing on two grounds: (1) that he had not received the blood alcohol test results, and (2) that he was entitled to present a "complete defense" at the bail revocation hearing. *Def.'s Mot. to Continue Hr'g on Mot. to Revoke Bail and Detention Hr'g* (ECF No. 170). The Court held a telephone conference with counsel the next day. *Notice of Hr'g* (ECF No. 173). On May 23, 2018, the Government filed a memorandum objecting to the continuance. *Gov't's Obj. to Def.'s Mot. to Continue Hr'g on Mot. to Revoke Bail and Detention Hr'g* (ECF No. 172). In its objection, the Government represented that the laboratory report, reflecting that Mr. Cain's blood test had come back with a concentration of ethanol of 0.150%, had been provided to defense counsel during the evening of May 22, 2018. *Id.* at 2. The Government also

said that the Nevada Highway Patrol was providing the Government with a disk containing the dashcam/cruiser video. *Id.*

At the telephone conference, defense counsel expanded upon his claim of a right to a "complete defense" at the revocation hearing. He maintained that a bail revocation hearing requires full due process, that the Rules of Evidence must be applied, and that a defendant has a right to confront witnesses against him. Upon hearing this position, the Court ordered counsel to file memoranda by 5:00 p.m. the next day. *Min. Entry* (ECF No. 173). During the telephone conference, the Court referred to the case of *United States v. de Castro-Font*, 778 F. Supp. 2d 201 (D.P.R. 2011) in which the district court concluded that the Confrontation Clause did not apply to bail revocation hearings. Both counsel complied. *Def.'s Mem. in Support of Confrontation and Excluding Hearsay Evid. at the Bail Revocation Hr'g* (ECF No. 174) (*Def.'s Mem.*); *Gov't's Mem. Regarding the Admissibility of Reliable Hearsay* (ECF No. 175) (*Gov't's Mem.*).

### C.     The May 25, 2018 Bail Hearing

Over Mr. Cain's adamant and vociferous objections, the Court allowed the Government to introduce both the police report and the blood alcohol test results from the April 19, 2018 traffic stop in Las Vegas, Nevada. The Court concluded that the police report and the blood alcohol test results were reliable evidence and therefore admissible for purposes of the bail revocation hearing. Other than District of Maine Probation Officer Laflin, who served as a foundational witness for the Nevada exhibits, no witnesses testified. Based on the admitted exhibits, the Court concluded

by clear and convincing evidence that Mr. Cain had violated a condition of bail in that he had consumed alcohol on April 19, 2018. *See* 18 U.S.C. § 3148(b)(1)(B).

The Court based its conclusion on: (1) that Mr. Cain had been speeding approximately twenty-one miles per hour over the speed limit, (2) that he had failed to maintain his travel lane three times as the Trooper followed him; (3) that the Trooper noticed the odor of alcohol coming from Mr. Cain's vehicle; (4) that Mr. Cain's speech was slow and slurred; (5) that Mr. Cain failed the walk-and-turn test; (6) that Mr. Cain stumbled as he walked; (7) that Mr. Cain exhibited difficulty standing; (8) that Mr. Cain was unable to perform the one-leg stand test; (9) that Mr. Cain's blood alcohol result at 2354 hours on April 19, 2018 was 0.150g/100ml; and (10) that Mr. Cain's blood alcohol result at 0052 hours on April 20, 2018 was 0.139g/100ml.

The Court did not conclude that Mr. Cain had committed a new criminal offense in violation of the bail condition that he not do so because the elements of each criminal violation and the specifics of the laws in state of Nevada had not been demonstrated. Furthermore, the absence of the dashcam video at the bail hearing was a gap in proof that the Court concluded did not allow for a finding of new criminal conduct.

The Court remanded Mr. Cain into custody pending further order because it also determined that there was no condition or combination of conditions that would assure that Mr. Cain did not represent a danger to the safety of any other person or the community and that he was not likely to abide by any condition or combination of conditions of release. 18 U.S.C. § 3148(b)(2)(A), (B). The Court took into account

the fact that the victim of Mr. Cain's offense resides in the state of Maine and, other than asking to be released, the absence of any concrete proposal by Mr. Cain to assuage the Court's concern about the victim's continued safety.

### D.   The Dashcam Video

Although Mr. Cain had been supplied with a copy of the police report and the results of the blood alcohol tests before the bail hearing, the Government had not received and turned over the dashcam video of the stop and arrest in Nevada.  Mr. Cain objected to the hearing proceeding without the dashcam evidence, claiming that it could exonerate him and that, in any event, he had the right to view it before the hearing.  Apart from wondering how something defense counsel had not yet seen could be deemed exonerating, the Court offered to defense counsel that if he wished another detention hearing once he received the video, the Court would schedule one post-haste and would allow Mr. Cain's counsel to present the dashcam evidence and any other evidence without prejudice.  To date, Mr. Cain's counsel has not requested a new hearing.

## II.   THE PARTIES' POSITIONS

### A.   The Defendant's Position

In his memorandum, Mr. Cain asserted:

> The Court should provide Mr. Cain the opportunity to confront any witnesses against him, and exclude hearsay evidence, at the bail revocation hearing.  Mr. Cain's Sixth and Fourteenth Amendment rights to confront witnesses against him, and the Federal Rules of Evidence, apply to bail revocation hearings.

*Def.'s Mem.* at 1.  Mr. Cain admitted that the Federal Rules of Evidence do not apply to "granting or revoking probation or supervised release; and considering whether to release on bail or otherwise."  *Id.* (quoting FED. R. EVID. 1101(d)(3)).  But, pointing to the language "release on bail or otherwise", Mr. Cain observed that the Federal Rules of Evidence do not expressly except bail revocation hearings from their applicability. *Id.*  He also pointed to the bail revocation statute, 18 U.S.C. § 3148, which — as opposed to § 3142(f)(2)(B) — does not expressly state that the Rules of Evidence do not apply.  *Id.* at 2.  Mr. Cain distinguished *de Castro-Font* by saying that the district court failed to address whether confrontation rights in *United States v. Taveras*, 380 F.3d 532 (1st Cir. 2004) applied to bail revocation proceedings.  *Id.*

Mr. Cain cited cases in which courts have found that the Rules of Evidence apply to bail forfeiture proceedings.  *Id.* at 2-4 (citing *United States v. Vaccaro*, 719 F. Supp. 1510 (D. Nev. 1989), *United States v. Veon*, 538 F. Supp. 237 (E. D. Cal. 1982)).  He cited *United States v. Honken*, 378 F. Supp. 2d 1010 (N.D. Iowa 2004) for the proposition that the "or otherwise" language in Rule 1101(d)(3) does not create a "catchall" category of "miscellaneous proceedings" to which the Rules of Evidence do not apply.  *Id.* at 4.

In addition, Mr. Cain insisted that in *Gagnon v. Scarpelli*, 411 U.S. 778 (1973) and *Morrissey v. Brewer*, 408 U.S. 471 (1972), the Supreme Court recognized "a due process right to confrontation and cross-examination in both the informal and formal stages of the revocation process."  *Id.* at 5.  Mr. Cain quoted *Morrissey* as requiring for a parole revocation hearing that "[o]n request of the parolee, [the] person who has

given adverse information on which parole revocation is to be based is to be made available for questioning in his presence." *Id.* (quoting *Morrissey*, 408 U.S. at 487). He said that in *Gagnon*, the Supreme Court "extended *Morrissey*'s requirements to state probation revocation hearings." *Id.* at 5-6 (citing *Gagnon*, 411 U.S. at 782).

Finally, he stated that the First Circuit in *Tavares* concluded that a supervisee has a right to confrontation under Federal Rule of Criminal Procedure 32.1 and that the "2002 amendments to Rule 32.1 reveal that the procedural protections established by Rule 32.1(b)(2)(C) were designed to track the due process rights established for parolees in *Morrissey*." *Id.* (citing *Tavares*, 380 F.3d at 532).

## B.    The Government's Position

The Government conceded that the "or otherwise" language in Rule 1101(d)(3) does not make clear that the Rules of Evidence do not apply to a bail revocation proceeding; however, the Government argued that the statutes and caselaw show that reliable hearsay is admissible at such proceedings. *Gov't Mem.* at 2.  Even though § 3148 does not make express reference to the inapplicability of the Rules of Evidence to bail revocation hearings, the statute's reference to § 3142, in the Government's view, incorporates § 3142's language on the inapplicability of the Rules of Evidence to bail revocations. *Id.* at 1.  The Government cited *United States v. Acevedo-Ramos*, 755 F.2d 203, 207 (1st Cir. 1985) and *de Castro-Font* for the proposition that bail hearings are not intended to be formal proceedings. *Id.* at 1-2.

## III.    DISCUSSION

At the bail revocation hearing, the Court was openly skeptical of Mr. Cain's arguments about his right to have the Court apply the Rules of Evidence and the right of confrontation to the hearing.

### A.    Rule of Evidence 1101(d)(3)

Rule of Evidence 1101(d)(3) excepts "miscellaneous proceedings" from the Rules of Evidence, including "granting or revoking probation or supervised release" and "considering whether to release on bail or otherwise." FED. R. EVID. 1103(d)(3). The advisory committee note makes plain that "[p]roceedings with respect to release on bail or otherwise do not call for application of the rules of evidence." FED. R. EVID. 1103, advisory committee note to 1972 proposed rules. Even though Rule 1103(d)(3) does not define "or otherwise", the logical inference is that "release . . . or otherwise" must mean the full range of remedies a court may impose at a bail hearing, including release on the person's own recognizance, conditional release, incarceration, and must capture the same range of remedies for violations of bail conditions. Another plausible reading, one espoused in one of the cases Mr. Cain cites, is that the "or otherwise" language is intended to capture proceedings that relate to conditions of release. *See United States v. Honken*, 378 F. Supp. 2d 1010, 1023-24 (N.D. Iowa 2004) ("Rather, that language modifies only conditions of release, that is, the Rules of Evidence do not apply to proceedings with respect to release on bail or on other conditions. . . . it is clear that the Advisory Committee intended the 'or otherwise' language to relate to conditions of release"). From a practical perspective, a person

is released on bail only if the individual was arrested. Typically at an initial appearance, if the judge releases the individual on bail in accordance with 18 U.S.C. § 3142, it is with conditions.[1] Rule 1103(d)(3) makes it plain that the Rules of Evidence do not apply to a hearing to determine whether to release a person and, if so, what conditions should be imposed on release.

If a person on bail is alleged to have violated a bail condition, the Government initiates a proceeding for revocation and a judicial officer may issue an arrest warrant. 18 U.S.C. § 3148(b). The individual is arrested and, if possible, is brought before the judicial officer who originally set the bail to determine what action should be taken as a result of the violation, including revocation. 18 U.S.C. § 3148(b). At that point, as in Mr. Cain's case, the determination is whether to "release . . . or otherwise." FED. R. EVID. 1101(d)(3). Thus, by its express language, Rule 1103(d)(3) provides that the Rules of Evidence do not apply to bail revocation hearings. The Court sees no room for Mr. Cain's interpretation of Rule 1103(d)(3), exempting the Rules of Evidence from the initial determination of whether to place a person on bail to begin with, but enforcing the Rules of Evidence for a bail revocation hearing if the person is alleged to have violated the conditions of release, whether pretrial, presentence, or during appeal.

In fact, Mr. Cain cites no caselaw that stands for the proposition that he is urging, namely that the Rules of Evidence do apply to bail revocation proceedings, and the Court could find none. Courts have routinely ruled that the Rules of Evidence

---

[1] Section 3142(c)(1)(A) sets forth mandatory conditions to be imposed upon release on bail, including the no-new-crimes condition.

do not apply to analogous proceedings. *Morrissey*, 408 U.S. at 489 ("[T]he [parole revocation] process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial"); *United States v. Vixamar*, 679 F.3d 22, 30 (1st Cir. 2012) ("[T]he rules of evidence do not apply to probation-revocation proceedings"); *United States v. Smith*, 500 F.3d 27, 31 (1st Cir. 2007) (The rules of evidence "do not apply" to a supervised release revocation hearing).

In short, the Court finds no support for Mr. Cain's strained interpretation of Rule 1103(d)(3).

### B.    The Statutory Analysis

Mr. Cain also makes a statutory argument. Mr. Cain notes that § 3148 is "silent on whether the Rules of Evidence apply." *Def.'s Mem.* at 2. He contrasts this silence with § 3142(f)(2)(B), which addresses a hearing concerning the release of a defendant pending trial, and expressly provides that "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." *Id.* Mr. Cain argues that "[i]t can be presumed that if Congress had intended to exclude the Rules of admissibility from revocation hearings it would have included the same language set forth in Section 3142." *Id.*

But § 3148 only generally references a "hearing." 18 U.S.C. § 3148(b) ("The judicial officer shall enter an order of revocation and detention if, after hearing, the judicial officer finds [a bail violation]"). Unlike § 3142(f)(2)(B), § 3148 does not

address the type of hearing.  It would be odd to glean from the mere reference to a "hearing" that Congress infused into this word a requirement that the Rules of Evidence must be applied and the Confrontation Clause must be enforced.

Even so, § 3148(b) requires the judicial officer to refer to § 3142 to set any conditions of release and in order to do so, the judicial officer must do so within the context of a hearing.  The reference in § 3148 is a general reference to "the provisions" of § 3142.  18 U.S.C. § 3148(b) ("[T]he judicial officer shall treat the person in accordance with the provisions of section 3142 of this title and may amend the conditions of release accordingly").  There is no reason to conclude that by the statutory reference to "the provisions" of § 3142, Congress intended to exclude the provisions of § 3142(f).

### C.     The Confrontation Clause

Mr. Cain's broad claim that the protections of the Sixth and Fourteenth Amendments apply to a bail revocation proceeding is also without support.   In addressing analogous arguments about the applicability of the Confrontation Clause to parole revocation proceedings, the First Circuit observed that the Confrontation Clause provides defendants with the right to confront witnesses "in criminal prosecutions." *United States v. Rondeau*, 430 F.3d 44, 47 (1st Cir. 2005) (quoting U. S. CONST. AMEND. VI).  As the First Circuit has written, "[t]he Supreme Court has long recognized that a parole revocation hearing, which is for present purposes analogous to a supervised release hearing, is *not* equivalent to 'a criminal prosecution.'" *Id.* (citing *Morrissey*, 408 U.S. at 480) (emphasis in *Rondeau*).  Mr.

Cain presents no case where a court has held that the Confrontation Clause applies to a bail revocation proceeding.

### D. Other Considerations

A bail revocation, particularly in the pre-sentencing context, is a step removed from a parole or supervised release revocation. For individuals like Mr. Cain, who pleaded guilty and are awaiting sentence, the statute reverses the presumption of release in § 3142 and generally requires a court to incarcerate a defendant pending the imposition of sentence. 18 U.S.C. § 3143(a) ("Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition of sentence . . . be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community. . ."). An exception exists where the person's guideline sentence "does not recommend a term of imprisonment", 18 U.S.C. § 3143(a), or where the person's recommended guideline range is less than the total time the person has or will spend in custody before the imposition of sentence.

Neither is applicable here. Mr. Cain was arrested on January 21, 2016 and detained until February 17, 2016, when he was released. *Presentence Investigation Report* at 1. His sentencing hearing is already scheduled for June 28, 2018. Under the applicable guideline, Mr. Cain faces a sentence of fifty-one to sixty-three months. *Id.* ¶ 56. Mr. Cain is not at risk of overstaying his sentence as a result of a bail revocation. Therefore, a bail revocation for Mr. Cain is not an additional punishment;

it is only a question of timing, namely when he starts the sentence, May 25, 2018 or June 28, 2018. In these circumstances, there is even less of an argument that a defendant subject to bail revocation has the Constitutional rights that Mr. Cain is asserting.

The Court's conclusion is consistent with other authority. The Court begins with the Bail Reform Act of 1984 and the First Circuit case of *Acevedo-Ramos*. Under 18 U.S.C. § 3141, the Bail Reform Act distinguishes between release and detention pending trial and pending sentence and appeal. For individuals awaiting trial, a judicial officer is generally required to presume that the person shall be released, and, if bail conditions are imposed, they are to be the "least restrictive further condition, or combination of conditions, that [ ] will reasonably assure the appearance of the person as required and the safety of any other person or the community." 18 U.S.C. § 3142(c)(1)(B). However, once a person has pleaded guilty, like Mr. Cain, the statute provides that the judicial officer "shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of a sentence . . . be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3143(a)(1). Thus, under the statute, directly after the guilty plea, the Court may order the defendant detained pending sentence unless the defendant convinces the Court by clear and convincing evidence that he should be released. The burden "rests with the defendant." FED. R. CRIM. P. 46(c).

In *Acevedo-Ramos*, dealing with the pretrial detention of a defendant, then Judge Stephen Breyer wrote an extensive analysis on whether the Rules of Evidence apply to a bail hearings and concluded that "the lawfulness of the practice of using hearsay evidence at bail hearings is well established." 755 F.2d at 204. Judge Breyer explained that the authority to rely on hearsay evidence "rests primarily upon the need to make the bail decision quickly, at a time when neither party may have fully marshaled all the evidence in its favor." *Id.* at 206. According to Judge Breyer, it is also based on the notion that "at least some hearsay on some occasions may be fairly reliable." *Id.* Bail hearings, Judge Breyer wrote, are "typically informal affairs, not substitutes for trial or even for discovery." *Id.* After reviewing the terms of the Bail Reform Act, Judge Breyer stated that "Congress did not intend to forbid the judicial officer to rely upon investigatory descriptions of evidence (and similar hearsay) where the judicial officer reasonably concludes that those descriptions, reports, and similar evidence, in the particular circumstances of the hearing, are reliable." *Id.* at 207.

In *de Castro-Font*, the district court of Puerto Rico rejected a similar argument to the one made by Mr. Cain. There, as here, the defendant cited *Taveras*. But, as the *de Castro-Font* Court observed, the *Taveras* Court was addressing a revocation of supervised release, not a bail revocation, and supervised release violations are covered by Federal Rule of Criminal Procedure 32.1, which expressly provides for the right to "question any adverse witness, unless the court determines that the interest of justice does not require the witness to appear." *De Castro-Font*, 778 F. Supp. 2d at 204 (citing *Taveras*, 380 F.3d at 536) (quoting FED. R. CRIM. P. 32.1(b)(2)(C)).

The same flaw exists in Mr. Cain's argument that *Morrissey* applies to bail hearings. The *Morrissey* Court dealt with parole revocations. 408 U.S. at 480 ("[T]he revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations"). The Supreme Court concluded in *Morrissey* that parole revocation proceedings are still entitled to basic due process protections. *Id.* According to *Taveras*, Rule 32.1 "recognizes that the court should apply a balancing test at the [revocation] hearing itself when considering the releasee's asserted right to cross-examine adverse witnesses. The court is to balance the person's interest in the constitutionally guaranteed right to confrontation against the government's good cause for denying it." *Taveras*, 380 F.3d at 536 (quoting Fed. R. Crim. P. 32.1 advisory committee's note to 2002 amendment). As *Taveras* noted, one of the primary focuses of the inquiry is "the reliability of the evidence that the Government seeks to introduce." *Id.*

But bail hearings are not covered by Rule 32.1; Rule 46(c) addresses bail revocations, and Mr. Cain has supplied no caselaw suggesting that even the more limited rights set forth in the *Morrissey* holding apply to bail revocation hearings, especially those pending sentencing or appeal. As the First Circuit has written, "there is no constitutional right to bail." *United States v. Valdivia*, 104 F. App'x. 753, 755 n.3 (1st Cir. 2004).

Moreover, as noted earlier, even if *Morrissey* applied, (which it does not), the Supreme Court wrote in *Morrissey* that "the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be

admissible in an adversary criminal trial." 408 U.S. at 489.  Thus, even if the Court accepted Mr. Cain's argument that *Morrissey* applied to the bail revocation proceeding, the Court would have been allowed under *Morrissey* to consider the police report and the laboratory results so long as it found the evidence reliable.

### E.     Donald L. Cain's Authority

In support of his novel argument, Mr. Cain cited *United States v. Vaccaro*, 719 F. Supp. 1510 (D. Nev. 1989), *United States v. Veon*, 538 F. Supp. 237, 249-50 (E.D. Cal. 1982), *United States v. Honken*, 378 F. Supp. 2d 1010, 1023 (N.D. Iowa 2004), and *United States v. Brewer*, 947 F.2d 404 (9th Cir. 1991).  Neither *Vaccaro* nor *Veon* is germane.  Each case involves bail forfeiture proceedings, which are subject to Federal Rule of Civil Procedure 46(b), and the courts observed that Rule 1101(d)(3) does not except bail forfeiture proceedings.  *Vaccaro*, 719 F. Supp. at 1515-16; *Veon*, 538 F. Supp. at 248-49.  As a bail bond is "a contract between the government and the defendant and his surety," general contract construction principles apply to the resolution of the bail forfeiture proceeding.  *Vaccaro*, 719 F. Supp. at 1517. Furthermore, unlike a bail revocation, the legal rights of a third party, namely the surety, are also implicated.  The Court does not view caselaw involving bail forfeiture proceedings as relevant to determining what procedures should be applied in bail revocation proceedings.

*Honken* involved whether the Federal Rules of Evidence apply to a hearing to resolve security issues in a capital case, and the district court ruled that the Rules of Evidence do apply.  *Honken*, 378 F. Supp. 2d at 1023.  While the *Honken* Court did

write that the "otherwise" language of Rule 1101(d) does not create a "catch-all" category of miscellaneous proceedings to which the Rules of Evidence do not apply, the broader context of that excerpt actually undermines Mr. Cain's position. As the Court mentioned above, the *Honken* Court's reasoning is founded upon its interpretation that the "or otherwise" language is intended to capture proceedings that relate to conditions of release. *Id.* at 1023-24 ("Rather, that language modifies only conditions of release, that is, the Rules of Evidence do not apply to proceedings with respect to release on bail or on other conditions. . . . it is clear that the Advisory Committee intended the 'or otherwise' language to relate to conditions of release"). Thus*, Honken* supports the view that the "or otherwise" at the end of "considering whether to release on bail or otherwise" in Rule 1101(d)(3) actually includes bail revocation hearings.

The Ninth Circuit case of *United States v. Brewer* only holds that, as suppression hearings are not mentioned in the list of exempted proceedings in Rule 1101(d)(3), the Rules of Evidence apply to such hearings. 947 F.2d at 408. Again, *Brewer* does not stand for the proposition that the Rules of Evidence apply to "proceedings with respect to release on bail or otherwise," which are specifically mentioned as exempted. *See* Fed. R. Evid. 1101(d)(3).

None of the authority cited by Mr. Cain begins to support his argument.

## F.     The Requested Evidentiary Hearing

By demanding the right to cross-examine witnesses and the right to application of the Rules of Evidence, Mr. Cain's defense counsel was attempting to

scuttle the detention hearing for the alleged bail violation. Absent the actual presence of the Nevada state trooper who made the stop and arrest and the witnesses (including custodial witnesses) who were involved in extracting the blood samples and the testing of them, the Rules of Evidence would not allow the admission of the police report and the blood alcohol test results. Without this evidence, the Government would not have been able to prove the alleged bail violations, and Mr. Cain would have been free to return to Nevada under the same bail conditions he recently violated. In other words, there would be no sanction for his violation of the conditions of his release.

Under Mr. Cain's argument, in order to prove a bail violation, the Government would be forced to fly multiple witnesses from Nevada to Maine and essentially put on a full criminal trial. Heeding Judge Breyer's admonition that bail hearings must be quick, are not intended to be trials or even discovery, and the standard for admissibility is reliability, Mr. Cain's objections, for which he offered zealous, but empty argument, were frivolous.

IV. **CONCLUSION**

The Court OVERRULES Donald L. Cain's objections to the consideration of a police report and laboratory results as evidence of a bail violation and his argument that the Rules of Evidence and the Confrontation Clause apply to bail violation hearings. The Court ORDERS Donald L. Cain's bail be revoked and that he be detained pending the imposition of sentence. The Court ORDERS the Defendant committed to the custody of the Attorney General or his designated representative for

confinement in a corrections facility separate, to the extent practicable, from persons serving sentences or being held in custody pending appeal. The Defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal for the purposes of an appearance in connection with a court proceeding.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 1st day of June, 2018