UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:16-cr-00103-JAW |
| | ) | |
| DONALD CAIN | ) | |

**ORDER ON FOURTH AMENDED MOTION
FOR COMPASSIONATE RELEASE**

An inmate again moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A), claiming his risk of serious complications from COVID-19 is an "extraordinary and compelling" reason to release him from incarceration. Just six months ago, the Court denied a similar motion by the inmate. The Court dismisses the inmate's latest motion without prejudice after considering the inmate's changed circumstances, including his new liver condition, his decision to refuse the COVID-19 vaccine, his newfound remorse for his crime, his transfer to a new prison, and a greater amount of time served.

## I.    BACKGROUND[1]

Approximately six months ago, on November 24, 2020, the Court dismissed without prejudice a motion for compassionate release by Donald Cain after reaching

---

[1]    Although Donald Cain denominated this motion as the fourth amended motion for compassionate release, this is actually Mr. Cain's fifth motion for compassionate release. On June 9, 2020 the Court dismissed Mr. Cain's first motion for compassionate release without prejudice for failure to comply with § 3582(c)(1)(A)'s statutory exhaustion requirement. *Order on Emergency Mot. for Compassionate Release* (ECF No. 252). On August 11, 2020, the Court dismissed Mr. Cain's second motion for compassionate release without prejudice for failure to comply with the statutory exhaustion requirement. *Order on Mot. for Compassionate Release* (ECF No. 262). On November 24, 2020, the Court dismissed Mr. Cain's third motion for compassionate release without prejudice after reaching the merits. *Order on Second Am. Mot. for Compassionate Release* (ECF No. 280). Most recently, on February 3, 2021, the Court dismissed without prejudice Mr. Cain's fourth motion for compassionate release for failure to comply with the exhaustion requirement. *Order on Def.'s Third Am. Mot. for Compassionate Release* (ECF No. 290).

the merits.  *United States v. Cain*, No. 1:16-cr-00103-JAW-1, 2020 U.S. Dist. LEXIS 220370, at *1-39 (D. Me. Nov. 24, 2020); *Order on Second Am. Mot. for Compassionate Release* (ECF No. 280).  Now, for the fifth time, Mr. Cain moves for compassionate release.  In its November 24, 2020 order, the Court provided an exhaustive account of the factual background, including Mr. Cain's history and characteristics, his criminal history, and the nature and circumstances of Mr. Cain's offense.  *Cain*, 2020 U.S. Dist. LEXIS, at *18-27.  Only an abridged procedural history is necessary here.

On July 19, 2018, the Court sentenced Mr. Cain to sixty months of incarceration, three years of supervised release, a $100 special assessment and no fine after his conviction for stalking in violation of 18 U.S.C. § 2261A(2)(B).  *Min. Entry* (ECF No. 193); *J.* (ECF No. 197).  Mr. Cain appealed to the First Circuit, which affirmed this Court on July 1, 2019.  *J.* (ECF No. 212).

On March 22, 2021, Mr. Cain filed a pro se motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  *Fourth Mot. for Immediate Release to Home Confinement Per FSA 3582(c)(1)(A)* (ECF No. 291) (*Def.'s Mot.*).  On April 5, 2021, the Government responded in opposition.  *Gov't Resp. in Opp'n to Def.'s Fourth Mot. for Compassionate Release* (ECF No. 295) (*Gov't Opp'n*).  That same day, Mr. Cain submitted an addendum to his motion for compassionate release.  *Def.'s Addendum* (ECF No. 296).

On April 8, 2021, the Court ordered Mr. Cain and the Government to clarify Mr. Cain's COVID-19 vaccination status.  *Order* (ECF No. 298).  On April 15, 2021,

Mr. Cain replied to the Government's opposition brief and the Court's order dated April 8, 2021. *Def.'s Resp. to Gov't's Opp'n to Def.'s Fourth Mot for Compassionate Release* (ECF No. 299) (*Def.'s Reply*). On April 20, 2021, the Government filed a memorandum concerning Mr. Cain's vaccination status. *Suppl. Mem. in Supp. of Gov't's Resp. in Opp'n to Def.'s Fourth Mot. for Compassionate Release* (ECF No. 300) (*Gov't's Suppl. Mem.*).

## II.   THE PARTIES' POSITIONS

### A.   Donald Cain's Motion

Mr. Cain "ask[s] the court to grant [his] motion for immediate release to home confinement" because "it has been 32 days plus since [his] last motion" was dismissed for failure to meet the exhaustion requirement. *Def.'s Mot.* at 1. He attached a paper copy of a "cop-out asking the warden at [FCI] Oakdale for [his] release" dated February 12, 2021. *Id.*; *id.*, Attach. 1, *Inmate Req. to Staff*.

Turning to the merits, Mr. Cain reminds the Court that it dismissed one of his prior motions for compassionate release out of concern that he "did not show any remorse to [his] ex-wife" for his cyberstalking offense. *Def.'s Mot.* at 2. Mr. Cain claims to "have remorse for the way [he] treated [his ex-wife]." *Id.* He says that he "never meant to cause her any pain or distress" and now knows that his actions were "completely and utterly terrible and she did not deserve that." *Id.* He states he is "remorseful" and "tru[ly] sorry." *Id.* Mr. Cain concludes by asserting his compliance with the exhaustion requirement, the Government's concession in a prior motion that

3

his medical conditions are extraordinary and compelling, and his remorse for his crime justify his immediate release to home confinement. *Id.*

## B.    The Government's Opposition

The Government urges the Court to deny Mr. Cain's motion for two reasons. First, he declined the COVID-19 vaccination, which the Government argues prevents Mr. Cain from showing "extraordinary and compelling reasons" for release. *Gov't's Opp'n* at 1. Second, Mr. Cain "poses a danger to the safety of the community, and the factors established in 18 U.S.C. § 3553(a) weigh heavily against any reduction in sentence." *Id.* The Government concedes Mr. Cain satisfied the statutory exhaustion requirement by submitting an email request to the warden at FCI Oakdale on February 12, 2021 and filing his motion for compassionate release on March 22, 2021. *Id.* at 11 (citing *id.*, Attach. 1, *TRULINCS Message* at 3). The Government acknowledges the BOP transferred Mr. Cain from FCI Oakdale to FCI Englewood after submitting his request but takes the "position that the Court may conclude [Mr. Cain] has satisfied the claim-processing rule by submitting his request to the warden of FCI Oakdale . . .." *Id.* at 11 n.10.

The Government asks the Court to deny Mr. Cain's motion because he "has not identified an 'extraordinary and compelling reason' within the meaning of § 3582(c)(1)(A) and the applicable policy statement." *Id.* at 12. The Government contends the COVID-19 pandemic, "which poses a threat to every non-immune person in the country," does not entitle Mr. Cain to relief under the relevant policy statement. *Id.* Moreover, the Government observes Mr. Cain's current motion for

compassionate release fails to identify any medical conditions that would justify release. *Id.* at 12-13.

Despite Mr. Cain's failure to specify medical conditions, the Government acknowledges Mr. Cain has previously claimed to have diabetes, heart problems, hyperlipidemia, syncope episodes, obesity, high cholesterol, adrenal insufficiency, and hypertension. *Id.* at 12-13 (citing *Def.'s Second Am. Renewed Mot. for Compassionate Release* at 2 (ECF No. 264); *Def.'s Am. Renewed Mot. for Compassionate Release* at 2-3 (ECF 257)). The Government says the Centers for Disease Control and Prevention (CDC) "does not identify hyperlipidemia/high cholesterol, syncope episodes, or adrenal insufficiency as conditions increasing an individual's risk of severe illness from COVID-19." *Id.* at 13. It observes Mr. Cain's medical records "do not appear to identify any current official diagnosis of obesity" but that on January 7, 2021 his weight was the same as on September 10, 2020 when a medical provider found him obese. *Id.* (citing *id.*, Attach. 3, *BOP Health Services Clinical Encounter*, at 81, 94-95 (*2021 Med. Records*); *Gov't's Resp. in Opp'n to Def.'s Second Am. Renewed Mot. for Compassionate Release*, Attach. 2, *BOP Health Services Clinical Encounter* at 2-3 (ECF No. 267) (*2020 Med. Records*)). The Government also submits Mr. Cain is a non-insulin-dependent type-2 diabetic and has been diagnosed with primary hypertension, which are conditions the CDC indicates may increase the risk of death or serious illness from COVID-19. *Gov't's Opp'n* at 13-14.

The Government recognizes it previously conceded Mr. Cain's Type-2 diabetes and obesity presented an "extraordinary and compelling reason" for release when

5

combined with the risk of serious complications from a potential COVID-19 infection. *Id.* at 14-15. The Government retracts its concession due to changed circumstances. *Id.* at 15-16. Specifically, the Government says Mr. Cain was offered the Moderna COVID-19 vaccine but declined. *Id.* at 15 (citing *2021 Med. Records* at 102, 156). The Government concludes that "[i]n these circumstances . . . the Court may properly conclude [Mr. Cain] has failed to establish extraordinary and compelling reasons warranting compassionate release." *Id.* at 16. The Government also states Mr. Cain's BOP facility, FCI Englewood, has the spread of COVID-19 "largely under control" and that Mr. Cain has never tested positive for the virus. *Id.* at 16-17.

Next, the Government considers the danger Mr. Cain poses to the community and the § 3553(a) factors. *Id.* at 17. It points out that the Court denied a previous motion for compassionate release by Mr. Cain due to the danger he poses to the community and the § 3553(a) factors. *Id.* The Government contends Mr. Cain is now showing remorse because "his lack of remorse appears to be a barrier to a sentence reduction." *Id.* at 18. Rather than rely on Mr. Cain's newfound remorse, the Government asks the Court to consider Mr. Cain's "post-sentencing pattern of casting aspersions upon the victim and others involved in the case, hurling allegations of misconduct against law enforcement officers, a Magistrate Judge, and this Court, and raising factual claims unsupported by, and contrary to, the record . . .." *Id.*

## C. Donald Cain's Addendum

Mr. Cain filed an addendum to his motion for compassionate release and attached a copy of a request for compassionate release that he submitted to Warden

Ma'at at FCI Oakdale on February 12, 2021.  *Def.'s Addendum*, Attach. 1, *Administrative Exhaustion Request and Third Am. Mot. for Compassionate Release (Def.'s Third Mot.)*.  He also attached and incorporated his Third Amended Motion for Compassionate Release.  *Id.* at 1-2.  This attachment addresses the danger Mr. Cain poses to the public and the Court's prior finding that Mr. Cain has been unremorseful for his criminal conduct.  *Id.* at 1.

Mr. Cain proposes to live with his daughter in Wyoming and work in a store until he can return to the construction business.  *Id.*  He states the shame he feels from his  past wrongs "eats at [him] everyday."  *Id.*  He claims to "regret [his] behavior" and acknowledges he "should have had better composure when it came to handling issues" between himself and his ex-wife "instead of flying off the handle and resorting to name calling . . .."  *Id.*  Mr. Cain says he has "learned that verbal abuse can be more damaging [than] physical abuse, bruises heal faster [than] the mental toll on the mind, which lasts a lot longer and more devastating, but no abuse is acceptable."  *Id.*  Mr. Cain claims to accept "FULL RESPONSIBILITY for [his] conduct" during his marriage and notes that his ex-wife did not "deserve [his] treatment of her in the aftermath[,] it was deplorable."  *Id.* at 2.  In closing, Mr. Cain contends he is not dangerous because he is "a changed man" and has "moved on with [his] life" and wishes his ex-wife "all the best."  *Id.*

## D.   Donald Cain's Reply

Mr. Cain's reply first discusses why he turned down the COVID-19 vaccine. *Def.'s Reply* at 1.  He claims that he refused the vaccine because it "is not FDA

approved," "has caused some severe reactions in prison to inmates who took it," and he does not want "to be a guinea pig/test subject to a non-approved drug." *Id.* Mr. Cain insists he did not "take the subject lightly" and asked a BOP nurse about the vaccine's side effects. *Id.* He says the nurse told him that the vaccine might have adverse consequences for him because of his underlying medical conditions. *Id.* Mr. Cain claims he was "glad" he did not receive the shot as some inmates reported having sore arms, while others "were falling out having to be taken to [the] hospital and isolation" because "they couldn't get out of bed" and "complained of chills" and "sweating." *Id.*

Mr. Cain says "[t]here is no way" his refusal to take the vaccine undermined his claim for relief because the vaccination is "in [its] early stages and the FDA is not even sure if it will work and hasn't approved it." *Id.* He says he erred on the side of caution because the BOP previously prescribed him drugs that caused him liver damage. *Id.* Mr. Cain also claims that the vaccine is a "catch 22" because if he had received it, the Government would claim he is protected from COVID-19. *Id.*

Mr. Cain next claims the Government conceded his medical conditions and his risk of serious complications from COVID-19 are an "extraordinary and compelling" reason for his relief. *Id.* He criticizes the BOP's COVID-19 response as inadequate and says the medical care at FCI Englewood is "sub-par and non-existent." *Id.* He also says that he has a new diagnosis of liver disease, which was caused by medicine the BOP prescribed to him, and weighs in favor of release. *Id.*

In closing, Mr. Cain declares he is not a danger to the community because his ex-wife resides in northern Maine and he has not been in that community since March 3, 2015. *Id.* at 2. He says he used his phone during his pending divorce to cause his ex-wife "undue stress" and avers that he is "very sorry" for his actions. *Id.* He says he cannot show remorse to his ex-wife due to a no-contact order. *Id.* Mr. Cain points out that the BOP assessed him as having a "low" risk assessment and plans to release him to home confinement on January 27, 2022. *Id.* He asks the Court to release him to home confinement so that he can tend to his health. *Id.*

### E.   The Government's Supplemental Memorandum

In a supplemental memorandum, the Government affirms the BOP has not offered Mr. Cain a COVID-19 vaccine since his refusal on January 7, 2021. *Gov't's Suppl. Mem.* at 2.

## III.   LEGAL STANDARD

The Court has addressed the legal standard for deciding a motion for compassionate release on numerous occasions. *See, e.g., United States v. Crosby*, No. 1:17-cr-00123-JAW-01, 2020 U.S. Dist. LEXIS 199085, at *16-23 (D. Me. Oct. 27, 2020). Put succinctly, 18 U.S.C. § 3582(c)(1)(A)(i) permits a court to modify a term of imprisonment when (1) "extraordinary and compelling reasons warrant" the movant's release, (2) release is consistent with "the factors set forth in [18 U.S.C. §] 3553(a)", and (3) release comports with "applicable policy statements issued by the Sentencing Commission . . .." 18 U.S.C. § 3582(c)(1)(A).[2]

---

[2]   The United States Sentencing Commission issued a policy statement under United States Sentencing Guideline § 1B1.13 for addressing compassionate release motions brought by the Director

The movant bears the burden of proving that he is entitled to a sentence reduction, and "the Court has broad discretion in deciding whether to grant or deny a motion for sentence reduction." *United States v. Curtis*, No. 1:14-cr-00140-JAW, 2020 U.S. Dist. LEXIS 102045, at *12 (D. Me. June 11, 2020) (quoting *United States v. Britton*, 473 F. Supp. 3d 14, 16 (D.N.H. 2020) (internal citations omitted)).

## IV. DISCUSSION[3]

Just six months ago, the Court denied a compassionate release motion by Mr. Cain after a thorough review of his history and characteristics, the nature and circumstances of his offense, and his medical records. *Cain*, 2020 U.S. Dist. LEXIS 220370, at *18-27. Pursuant to 18 U.S.C. § 3582(c)(1)(A), the Court considered whether Mr. Cain was a danger to the community, whether the § 3553(a) factors favored release, and whether his medical conditions, coupled with the COVID-19 pandemic, were "extraordinary and compelling reasons warranting" release. *Id.* at *27-39. After giving due weight to these factors, the Court concluded that although "Mr. Cain has medical conditions that place him at greater risk of serious

---

of the Bureau of Prisons under § 3582(c)(1)(A).  However, "[t]he Sentencing Commission promulgated this policy statement before the emergence of the COVID-19 pandemic and before the changes to § 3582 put in place by the FIRST STEP Act."  *Crosby*, 2020 U.S. Dist. LEXIS 199085, at *20 n.1.  This Court agrees with the vast majority of courts that have held § 1B1.13 "'provides helpful guidance' but 'is not ultimately conclusive given the statutory change.'"  *United States v. Rembert*, No. 2:12-CR-66-DBH, 2020 U.S. Dist. LEXIS 210841, at *1 (D. Me. Nov. 11, 2020) (quoting *United States v. Fox*, No. 2:14-cr-03-DBH, 2019 U.S. Dist. LEXIS 115388, at *5 (D. Me. July 11, 2019), *aff'd*, No. 19-1785 (1st Cir. July 23, 2020)); *see United States v. Trenkler*, Cr. No. 92-10369 WES, 2021 U.S. Dist. LEXIS 87567, at *16 (D. Mass. May 6, 2021) (collecting cases).

[3]     18 U.S.C. § 3582(c)(1)(A) contains a mandatory claim processing rule, which bars some compassionate release motions as untimely. *See Crosby*, 2020 U.S. Dist. LEXIS 199085, at *17.  The Government may waive or concede exhaustion. *United States v. Whalen*, No. 1:11-cr-00033-JAW, 2020 U.S. Dist. LEXIS 118896, at *17-18 (D. Me. July 7, 2020).  When the Government waives exhaustion, the Court may address the merits of a motion for compassionate release. *Id.*  Here, the Government concedes exhaustion, so the Court addresses the merits of Mr. Cain's motion. *Gov't's Opp'n* at 11, 11 n.10.

complications should he contract COVID-19 in prison, . . . the seriousness of his offense, the danger he poses to the community and his victim, the need for just punishment, and most particularly, his persistent lack of remorse counsel against his release." *Id.* at *38.

Here, the question is whether Mr. Cain's circumstances have materially changed to warrant release. The Court identified five ways in which Mr. Cain's circumstances have changed since the Court's November 24, 2020 dismissal of his prior motion: (1) Mr. Cain has been diagnosed with a new liver condition, (2) Mr. Cain refused the COVID-19 vaccine, (3) Mr. Cain has expressed newfound remorse for his crimes, (4) Mr. Cain has been transferred to a new prison, and (5) Mr. Cain has served more of his sentence. After addressing each of these new circumstances, the Court concludes Mr. Cain is not an appropriate candidate for compassionate release.

## A.     Donald Cain's New Liver Condition

In its November 24, 2020 order, the Court concluded Mr. Cain's obesity, hypertension, and Type 2 diabetes increased his risk of complications from COVID-19 and weighed in favor of his release. *Cain*, 2020 U.S. Dist. LEXIS 220370, at *34-35. Updated medical records show that Mr. Cain continues to suffer from Type 2 diabetes, hypertension, and obesity.[4] *2021 Med. Records* at 33, 37-39.

---

[4]     Mr. Cain's updated medical records do not contain a diagnosis of obesity. However, the records indicate that as of January 7, 2021, Mr. Cain weighed 248 pounds. *2021 Med. Records* at 33, 37-39. This is the same weight as in September 2020, when a medical provider found Mr. Cain obese. *2020 Med. Records* at 3, 22. The PSR recorded that Mr. Cain is 5' 10" tall, and at 248 pounds, Mr. Cain has a BMI of 35.6, well within the standard definition of obese.

Mr. Cain has one new medical condition.  On December 10, 2020, Mr. Cain was diagnosed with "[u]nspecified cirrhosis of liver."  *Id.* at 38.  According to the CDC, "[h]aving chronic liver disease, . . . especially cirrhosis, or scarring of the liver, **can make you more likely** to get severely ill from COVID-19."  *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited June 3, 2021).  The Court therefore finds Mr. Cain's cirrhosis diagnosis is a changed circumstance that weighs in favor of release.  However, as the Court explains next, Mr. Cain's subsequent refusal of the COVID-19 vaccine substantially undercuts his argument for compassionate release.

### B.    Vaccine Refusal

On January 7, 2021, Mr. Cain was offered the Moderna-manufactured COVID-19 vaccine but refused it.  *Gov't's Opp'n* at 4.  The Government asks that the Court consider Mr. Cain's refusal of the COVID-19 because he "refused the opportunity to substantially reduce his risk" of COVID-19 and "should not be rewarded for that refusal with a sentence reduction."  *Id.* at 16.  Mr. Cain, on the other hand, urges "[t]here is no way" his refusal of the vaccine undermines his motion for compassionate release.  *Def.'s Reply* at 1.  He claims he refused the vaccine because it "is not FDA approved," "has caused some severe reactions in prison to inmates who took it," and he does not want "to be a guinea pig/test subject to a non-approved drug."

*Id.*  Mr. Cain also claims that a BOP nurse told him the COVID-19 vaccine could cause him more harm than good.[5]  *Id.*

The Court is not persuaded by Mr. Cain's reasoning.  He failed to provide any evidence that it is medically inadvisable for him to receive a COVID-19 vaccination.  More broadly, Mr. Cain ignores the risks of not being vaccinated and the benefit of vaccination.  CDC guidance affirms that the COVID-19 vaccines are "safe and effective."  *When You've Been Fully Vaccinated*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html (last visited June 3, 2021) ("COVID-19 vaccines are effective at preventing COVID-19 disease, especially severe illness and death"); *Ensuring COVID-19 Vaccine Safety in the US*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/safety.html (last visited June 3, 2021) ("COVID-19 vaccines are **safe and effective**") (emphasis in original).  The potential short-term side effects from the vaccination that Mr. Cain fears, such as "sore arms," "chills," and "sweating," are trivial compared to the risk of severe illness or death Mr. Cain may confront if he contracts COVID-19.

---

[5]      Mr. Cain also tries to justify his vaccine refusal by claiming the BOP prescribed him medication that caused his cirrhosis.  *Def.'s Reply* at 1.  He says that he "[erred] on the side of caution" in declining the vaccine because of his liver condition.  Mr. Cain provided no support for the allegation that the BOP caused his liver damage and the Court need not rule on what caused it.  In passing, the Court observes that Mr. Cain has been known to boast about the amount of alcohol he drinks.  *Restricted U.S. Probation Filing*, Attach. 1, *2nd Revised Presentence Investigation Report* ¶ 43 (ECF No. 255) (stating he consumed fifty-nine beers in one night and usually drinks forty-two).  The logical inference is that Mr. Cain's own binge drinking may have contributed to his liver damage.  On this record, the Court lacks sufficient evidence to conclude medications prescribed to Mr. Cain while in BOP custody caused his cirrhosis, as opposed to other factors.  But, as the Court noted, for purposes of his motion for compassionate release, it does not matter what caused Mr. Cain's cirrhosis.  What matters is that he has cirrhosis and what impact it has on his motion for compassionate release.

The risk-benefit analysis in favor of inoculation is so overwhelming that the Court holds Mr. Cain's refusal to be vaccinated as a factor against his motion for compassionate release. *See United States v. Greenlaw*, No. 1:18-cr-00098-JAW-06, 2021 U.S. Dist. LEXIS 66670, at *19 (D. Me. Apr. 6, 2021) (reaching the same conclusion). The Court's conclusion aligns with a growing consensus that an inmate's refusal of the COVID-19 vaccine weighs against granting compassionate release. *See id.* at *19 n.6 ("an inmate's vaccination refusal—without more—should be considered a factor, among others, against granting a motion for compassionate release if the motion is based on an inmate's risk of contracting COVID-19 while in prison"); *United States v. Baptiste-Harris*, No. 2:18-cr-00127-NT-1, 2021 U.S. Dist. LEXIS 77657, at *4 (D. Me. Apr. 22, 2021) ("The Defendant offers no support for the idea that he can argue that he is in harm's way, reject measures to mitigate the harm, and then use the continued risk of harm as a justification for release"); *United States v. Gianelli*, Criminal Action No. 05-10003-NMG-1, 2021 U.S. Dist. LEXIS 70459, at *5 (D. Mass. Apr. 9, 2021) ("Although defendant has the right to refuse medical treatment, this Court will not reward such refusal to protect himself with a get-out-of-jail card").

The Court is not ordering Mr. Cain to undergo a COVID-19 vaccination. Such an order would have constitutional implications. *See Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016); *Missouri v. McNeely*, 569 U.S. 141 (2013); *Sell v. United States*, 539 U.S. 166 (2003); *Schmerber v. California*, 384 U.S. 757 (1966); *United States v. Manubolu*, 478 F. Supp. 3d 32 (D. Me. 2020). Mr. Cain has the right to refuse medical

14

treatment, including a shot in the arm. *United States v. Martin*, No. 1:05CR21, 2021 U.S. Dist. LEXIS 57421, at *5-6 (N.D. W. Va. Mar. 26, 2021).

But Mr. Cain has no right to be free from the consequences of his own actions. He bears the burden to show "extraordinary and compelling" reasons justify his release, and the law does not require the Court to reward Mr. Cain for turning down a vaccine that may save his life, reduce the severe impact of the disease, and limit the risk he will spread the virus to others. As this Court and numerous others have observed, "[t]o reward Mr. [Cain] for his vaccination refusal would create a perverse incentive for defendants like Mr. [Cain] to refuse COVID-19 vaccines and put their lives and the lives of others in jeopardy in an effort to bolster their compassionate release motions." *Greenlaw*, 2021 U.S. Dist. LEXIS 66670, at *19 (citing *United States v. Figueroa*, No. 2:09-cr-00194-KJM, 2021 U.S. Dist. LEXIS 56143, at *12 (E.D. Cal. Mar. 23, 2021)).

It is true, as Mr. Cain complains, that full vaccination would undercut his motion for compassionate release because he would be less likely to contract COVID-19 while incarcerated, thus diminishing his argument that the Court should release him because of the risk of contracting COVID-19 while in federal prison. But unvaccinated individuals are at greater risk and vaccinated persons are safer, wherever they are. Moreover, the benefit of vaccination is not limited to the person receiving the shots. It extends to others who are in contact with the person. For Mr. Cain to refuse a vaccination, because he believes being unvaccinated will give him an advantage in his motion betrays the type of self-centered thinking that landed him

in federal prison to begin with.  In other words, Mr. Cain is willing to place other people, including his fellow inmates and prison workers, at greater risk of contracting COVID-19 from him because he thinks it will gain him an advantage in the pending motion.

Finally, although the Court finds Mr. Cain's vaccination refusal is a factor weighing against his release, even absent this factor, the Court would dismiss his motion because Mr. Cain failed to show his circumstances warrant compassionate release.  *Id.* at \*21; *United States v. Newton*, No. 1:17-cr-00073-JAW-1, 2021 U.S. Dist. LEXIS 48042, at \*24 (D. Me. Mar. 15, 2021) (declining to rest the Court's decision on an inmate's vaccine refusal because the defendant's motion was "plainly otherwise non-meritorious").

### C.   Donald Cain's Newfound Remorse

The Court must also consider Mr. Cain's newfound remorse for harassing and cyberstalking his ex-wife.  In denying Mr. Cain's prior motion for compassionate release, the Court stressed that "Mr. Cain has been anything but remorseful" for his crime and "has consistently blamed others for his own conduct." *Cain*, 2020 U.S. Dist. LEXIS 220370, at \*28.  The Court's November 24, 2020 order detailed the full scope of Mr. Cain's recalcitrant behavior after his conviction and sentence.  *Id.* at \*28-32. For purposes of this motion, the Court need not repeat that history in its entirety; however, some background is appropriate.

Time and time again, Mr. Cain has blamed everyone but himself for his incarceration.  *Id.* at \*31-32.  In the fall of 2019, Mr. Cain twice moved to disqualify

16

this Judge and the Magistrate Judge from ruling on his motion for a writ of habeas corpus under 28 U.S.C. § 2255.  *Id.* at *28.  Mr. Cain's motions to recuse were replete with factual misstatements, fabricated quotations, blatant misrepresentations, and utterly unfounded claims of racial bias and improper ex parte contacts with his victim, which this Court was required to meticulously correct.  *Id.* (citing *Order On Def.'s Mots. to Recuse* at 10-31 (ECF No. 237)).  Mr. Cain appealed the Court's order denying the motions to recuse to the First Circuit and lost.  *Id.* (citing *J.* at 1 (ECF No. 266); *Mandate* (ECF No. 277)).

The motions to recuse were just one example.  Mr. Cain's October 2019, habeas petition excoriated his ex-wife for levying false accusations against him, maintained the investigating FBI agent and Mr. Cain's ex-wife had conspired to imprison him, stated that his ex-wife had an "evil mind," and insisted the investigating FBI agent began the investigation against Mr. Cain as part of a "quid pro quo" to fulfill "his own carnal desires."  *Id.* at *29-31 (citing *Pet. for Writ of Habeas Corpus under 28 U.S.C. § 2241* at 18-19 (ECF No. 218)).  In his February 3, 2020, pro se reply, Mr. Cain accused this Judge and the Magistrate Judge of joining the alleged conspiracy.  *Id.*

In March 2020, Mr. Cain also filed a civil suit against his former defense lawyer, claiming the lawyer coerced him into pleading guilty and ruined his life, and a civil suit against the Bangor Daily News and its editor and a reporter for defamation because they published the Court's comments to Mr. Cain at his sentencing.  *Id.* at *30-31; *see Cain v. Sambides*, 1:20-cv-00071-JAW (D. Me); *Cain v. Tzovarras*, 1:20-cv-00070-JAW (D. Me.).

Having continually cast these scurrilous and frivolous aspersions against others for years, Mr. Cain now contends he "do[es] have remorse for the way he treated [his ex-wife]" and that he "never meant to cause her any pain or distress." *Def.'s Mot.* at 2. He says "what [he did] was completely and utterly terrible and [his ex-wife] did not deserve that." *Id.* He claims to be "remorseful" and "sorry." *Id.* Mr. Cain makes similar comments in an attachment to the addendum to his motion, writing "I regret my behavior and I should have had better composure when it came to handling issues between me and [my ex-wife], instead of flying off the handle and resorting to name calling which was uncalled for, I know that now, and I thank the court for opening my eyes to this." *Def.'s Third Mot.* at 2.

The Court hopes Mr. Cain's statements are sincere. If so, they reflect considerable growth and self-reflection. However, for three reasons, the Court does not view these statements as providing Mr. Cain with a materially stronger case for compassionate release than when the Court dismissed his prior motion on November 24, 2020. First, while Mr. Cain now expresses remorse, the Court finds he still fails to understand the seriousness of his crime. Mr. Cain's description of his offense as "resorting to name calling" is particularly troubling. *Def.'s Third Mot.* at 2. Needless to say, Mr. Cain is not in federal prison for name calling. He is in federal prison because he cyberstalked, harassed, and terrorized his ex-wife for over a year. *Cain*, 2020 U.S. Dist. LEXIS 220370, at *22-25.

Mr. Cain's conduct was villainous. He submitted false complaints to his ex-wife's employer that she was sexually harassing other employees and perpetrating

racial discrimination. *Id.* at *22. He called, texted, and emailed his ex-wife an average of over one hundred times per day. *Id.* He threatened to shoot his ex-wife's mother in the head. *Id.* at *23. Among other types of harassment, Mr. Cain sent his ex-wife a draft obituary he had written about her, told her to commit suicide, threatened to rape her and her family members, threatened to release a pornographic video of her, and tracked her location, which led to her believe he had enlisted the Hell's Angels motorcycle gang to watch her every move. *Id.* at *24. Mr. Cain's description of his conduct as "name calling" grossly misrepresents his concerted efforts to terrorize his ex-wife. The Court is also unimpressed by Mr. Cain's statement that he "never meant to cause [his ex-wife] any pain or distress." That was obviously his intent and he succeeded.

Second, in assessing Mr. Cain's dangerousness, the Court cannot turn a blind eye to Mr. Cain's post-conviction efforts to assail the credibility and motivations of his victim, the investigating officers, his lawyer, and this Court. Mr. Cain's statements of remorse and regret are a step in the right direction; however, they cannot wipe the slate completely clean of his protracted refusal to accept responsibility for his actions. Mr. Cain's prior submissions make plain his dishonest character and disrespect for the law. This weighs against his release.

Third, it bears emphasis that Mr. Cain expressed this remorse in support of a motion for compassionate release after the Court rejected a prior compassionate release motion because he lacked remorse. Under these circumstances, Mr. Cain's remorseful statements are inherently self-serving. As mentioned, Mr. Cain has

repeatedly filed false and misleading information and the Court is chary of taking Mr. Cain at his word.  As the Court emphasized in its November 24, 2020 order, Mr. Cain's "prolonged psychological assault of [his ex-wife] cries out for justice as loudly as ever . . . ."  *Id.* at *32.  Remorseful as Mr. Cain may be, the Court finds the need for just punishment outweighs his argument for release.

### D.    COVID-19 at FCI Englewood

When the Court denied Mr. Cain's prior compassionate release motion on the merits, Mr. Cain was incarcerated at FCI Oakdale I, which housed nine hundred twenty-four male inmates.  *Cain*, 2020 U.S. Dist. LEXIS 220370, at *35.  At that time, there were three active COVID-19 cases among prisoners at FCI Oakdale I and another eighteen COVID-19 cases among BOP staff.  *Id.*  The Court therefore concluded the "low incidence of COVID-19 among inmates within FCI Oakdale" did not substantially favor Mr. Cain's release, though the Court recognized the inherent difficulties of practicing effective social distancing in prison.  *Id.* at *36.  On balance, the Court concluded these factors favored Mr. Cain's release.  *Id.*

The BOP later transferred Mr. Cain from FCI Oakdale I to FCI Englewood.  As of today, there are nine hundred fifty-five total inmates at FCI Englewood.  *FCI Englewood*, BOP, https://www.bop.gov/locations/institutions/eng/ (last visited June 3, 2021).  Eight hundred fifty inmates reside at the FCI and an adjacent federal detention center (FDC), while another one hundred and five inmates reside at a minimum-security satellite camp.  *Id.*  Currently, no inmates at FCI Englewood are positive for COVID-19, although one BOP staff member is.  *COVID-19 Coronavirus*,

BOP, https://www.bop.gov/coronavirus/ (last visited June 3, 2021).   Since the pandemic began, six hundred and five inmates and seventy-one staff members at FCI Englewood have tested positive for COVID-19.   *Id.*   One inmate has died.   *Id.* Currently, the BOP reports that one hundred thirty-three BOP staff members and six hundred twenty-four inmates at FCI Englewood are fully vaccinated against COVID-19.   *Id.*

The high rate of vaccinations and absence of COVID-19 infections at FCI Englewood is encouraging.   The data indicate Mr. Cain's risk of COVID-19 infection at FCI Englewood is likely far lower than the risk of COVID-19 infection he faced at FCI Oakdale I on November 24, 2020.   Nevertheless, Mr. Cain still faces the challenge of practicing effective social distancing in prison.   On balance, the Court concludes he is less likely to contract COVID-19 in prison now than he was in November 2020. This does not favor releasing Mr. Cain.

### E.   Amount of Time Served

The final change between November 24, 2020 and May 2021 is that Mr. Cain has served a greater percentage of his sentence.   It has been six months since the Court dismissed Mr. Cain's motion for compassionate release, the obvious consequence being that Mr. Cain has now served six more months of his sixty-month sentence.   After applying good-time credits, Mr. Cain has a projected release date of July 27, 2022.   *Compassionate Release Req. Inmate Data* (ECF No. 255).   The full term of his sentence will expire on April 23, 2023.   *Gov't's Resp. in Opp'n to Def.'s Second Am. Renewed Mot. for Compassionate Release*, Attach. 1, *Sentence Monitoring*

*Computation Data* at 2 (ECF No. 267).  By the Court's calculation, Mr. Cain has served 72.4 percent of his statutory term and 61.7 percent of his full term. Nevertheless, the Court finds that the need for Mr. Cain to serve the remainder of his sentence weighs against his release.  *Accord Greenlaw*, 2021 U.S. Dist. LEXIS 66670, at *14.

### F.    Summary

On balance, the Court concludes Mr. Cain is not an appropriate candidate for compassionate release.  The Court finds that no extraordinary and compelling reasons justify Mr. Cain's release.  Although Mr. Cain's medical conditions increase his risk of serious complications from COVID-19, he refused a vaccine that would significantly reduce, if not effectively eliminate his risk of severe symptoms from a COVID-19 infection.  Moreover, FCI Englewood has largely contained the spread of COVID-19 and vaccinated most of its inmates.

The Court further concludes the 18 U.S.C. § 3553(a) factors do not support Mr. Cain's request for release.  While Mr. Cain now expresses remorse for his criminal conduct, the Court reaffirms that his continued incarceration is the most effective way to protect the public and is necessary to reflect the seriousness of his offense.  Mr. Cain's actions during his year-long psychological assault on his ex-wife speak much louder than his recent statements of remorse.  Therefore, the Court reaffirms its prior analysis of the § 3553(a) factors.  *Cain*, 2020 U.S. Dist. LEXIS 220370, at *32-33.  This is an independent basis to deny his motion.

The Court reiterates it does not want any harm to come to Mr. Cain and wishes him well.  Going forward, however, the Court will not regard Mr. Cain as an appropriate candidate for compassionate release unless he demonstrates substantially changed circumstances.  The Court wishes to impress upon Mr. Cain that it is very unlikely to change its analysis of the § 3553(a) factors.  Mr. Cain undertook extraordinary measures to terrorize and psychologically abuse his ex-wife. His conduct was so egregious that, in the Court's view, principles of just punishment demand that Mr. Cain serves his full sentence.

## V.    CONCLUSION

The Court DISMISSES without prejudice Donald Cain's Fourth Motion for Immediate Release to Home Confinement Per FSA 3582(c)(1)(A) (ECF No. 291).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of June, 2021.

23